Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6095 | **DATE** | 1/24/2002 |
| **CASE TITLE** | MICHALOWSKI et al vs. FLAGSTAR BANK et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 26 FEB 02 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, Defendants' motions to dismiss are granted in part as to counts V,VI,VII,VIII,IX, and X and denied in part as to counts I,II,III, and IV. Counts V,VI,VII, VIII, IX, and X are dismissed with prejudice for failure to state a claim. Plaintiffs are given leave to file an amended complaint consistent with this opinion by February 7, 2002. Defendants are given to February 18, 2002 to answer the amended complaint. The parties are to conduct an FRCP 26(f) conference and file a form 35 by February 22, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JAN 25 2002 date docketed | |
| | Docketing to mail notices. | | 30 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 1/24/2002 | |
| | | date mailed notice | |
| JS | courtroom deputy's initials | JS | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIM A. MICHALOWSKI and,
MERI C. MICHALOWSKI

    Plaintiff,

v.

FLAGSTAR BANK, FSB;
and CMC FINANCIAL, LLC,

    Defendants.

No. 01 C 6095

**DOCKETED**

JAN 2 5 2002

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On October 9, 2001, plaintiffs Tim A. Michalowski and Meri C. Michalowski (the "Michalowskis") filed a ten-count putative class action second amended complaint against defendants Flagstar Bank, FSB ("Flagstar") and CMC Financial, LLC ("CMC"). The second amended complaint purports to allege a class claim for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), against Flagstar and CMC in count I, a class claim for violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), against Flagstar and CMC in count II, a class claim for breach of fiduciary duty against CMC in count III, a class claim for inducing breach of fiduciary duty against Flagstar in count IV, a class consumer fraud claim against Flagstar in count V, a class claim for restitution against Flagstar in count VI, a claim against CMC for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638, against CMC in count

1



VII, a common law claim for unauthorized practice law against Flagstar and CMC in count VIII, a class consumer fraud claim under ICFA against Flagstar and CMC in count IX, and finally, a claim for restitution against Flagstar and CMC in count X.

On November 1, 2002, Flagstar filed a motion to dismiss counts I, II, IV, V, VI, and VIII-X of the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and on November 27, 2001, CMC filed a motion to dismiss counts I-III and VII-X of the second amended complaint also pursuant to Rule 12(b)(6). For the following reasons, Flagstar's and CMC's motions to dismiss are GRANTED in part and DENIED in part. Flagstar's and CMC's motions to dismiss are denied as to counts I, II, III, and IV, and granted as to counts V, VI, VII, VIII, IX, and X. Accordingly, counts V, VI, VII, VIII, IX, and X are dismissed with prejudice. Plaintiff has until February 7, 2002 to file a second amended complaint consistent with this opinion.

## STATEMENT OF FACTS[1]

The Michalowskis are Illinois residents who obtained a mortgage loan of $127,050 to purchase a home in Ingleside, Illinois on June 7, 2001. The mortgage loan was arranged for the Michalowskis by CMC, a mortgage broker. At the time of the closing, CMC had already sold the loan to Flagstar. Prior to the closing, the Michalowskis received a loan commitment dated April 9, 2001, a preliminary Federal Truth-in-Lending Disclosure Statement dated March 15, 2001, and a good faith estimate dated March 15, 2001, all of which specified a 7.125% interest rate for the Michalowskis' loan. At the closing, on June 7, 2001, the Michalowskis were provided a note by

---

[1] In considering the merits of a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6), the well-plead allegations of the complaint must be accepted as true. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). Accordingly, the facts alleged in the Michalowskis' second amended complaint are taken as true and set-out in this opinion.

2

CMC for the amount of their loan with an interest rate of 7.375%, two different Truth-in-Lending disclosure statements both dated June 7, 2001, a notice that the loan was being assigned to Flagstar, and a HUD-1 settlement statement that listed, among other things, a $400 commitment fee and a $400 processing fee paid to CMC by the Michalowskis, a $100 tax service fee paid to Flagstar by CMC, a yield spread premium of $794.06 paid to CMC from Flagstar, a $300 underwriting fee paid to Flagstar by the Michalowskis, and a $110 document preparation fee imposed by Flagstar but remitted to D.P.S., a third party document preparation service. All of the above listed fees were paid from the loan proceeds.

Yield spread premiums are payments made by a mortgage lender to a mortgage broker as compensation for negotiating a loan with a borrower. Typically, the rate of compensation is tied to the size of the loan, the interest rate the loan carries, and the time the loan closes. The higher the interest rate on the loan, the higher the yield spread premium for the broker. A yield spread premium is calculated based upon the difference between the interest rate at which the broker originates the loan and the par, or market, rate that the lender establishes. A yield spread premium allows a borrower to pay some or all of the up-front settlement costs for the loan over the life of the mortgage through a higher interest rate as opposed to paying the settlement costs from the loan proceeds. Because the mortgage that carries a higher interest rate can be sold by the lender to an investor at a higher price, the lender, in turn, pays the broker an amount reflective of this price difference. In this case, Flagstar paid CMC a .06% yield spread premium on the Michalowskis' mortgage loan based upon the .25% increase in the interest rate from 7.125% to 7.375%. The effect of increasing the Michalowskis' mortgage loan interest rate by .25% on the Michalowskis' 30-year mortgage was to increase the finance charge by more than $6 per $100 of amount financed. For a $123,250 loan, this

3

would result in over $5,000 in extra finance charges. At the time of the closing, the Michalowskis did not understand the effect of the yield spread premium.

The tax service fee of $100 charged by Flagstar was for a contract to have the real estate tax records examined each year to make sure taxes have been paid and properly credited to the Michalowskis' property. Such a contract can be purchased for $48. The $110 document preparation fee charged by Flagstar but remitted to D.P.S. was the expense for filling out the note, the mortgage, and other related documents. The document preparation services were not performed by an attorney and D.P.S. is not a professional corporation consisting of attorneys authorized to practice law. It is the standard practice of CMC and Flagstar to charge a document preparation fee comparable to $110 when CMC or Flagstar arranges a loan.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows this court to dismiss a complaint that fails to state a claim upon which relief may be granted. In considering the merits of a motion made pursuant to Rule 12(b)(6), the well-plead allegations of the complaint must be accepted as true. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). In addition, all ambiguities will be construed in favor of the plaintiff. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998). A court generally should only dismiss a complaint where it is clear that no relief could be granted with the allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). Additional facts submitted outside of the pleadings will be explicitly excluded and not considered, except those documents that are attached to the motion to dismiss, are referred to in the complaint and are central to the plaintiff's claims. Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998).

4

## ANALYSIS

I. Federal Claims

A. Count I - RESPA

Count I of the Michalowskis' second amended complaint alleges that Flagstar's payment of the yield spread premium to CMC on June 7, 2001 from the Michalowskis' mortgage loan proceeds violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, because the yield spread premium constituted an illegal fee received solely for CMC's referral of business and in exchange for CMC's success in persuading the Michalowskis to sign on to a loan at a higher interest rate than the base interest rate. Congress enacted RESPA to protect home buyers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. §2601(a). Specifically, § 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

However, even if it is established that a referral fee has been paid, however, there is no violation of RESPA if the payment is compensation "for goods or facilities actually furnished or for services actually performed . . . so long as a disclosure is made of the existence of such an arrangement to the person being referred . . . ." 12 U.S.C. § 2607(c)(2). In other words, it is perfectly legal under RESPA for a lender to pay a mortgage broker for services the broker has performed in connection with a real estate transaction but it is illegal for a lender to pay a broker a referral fee for sending business the lender's way.

5

The legality of yield spread premium payments under the RESPA has been the subject of several federal lawsuits across the country. See, e.g., Vargas v. Universal Mortgage Corp., 2001 WL 558045 (N.D. Ill., May 21, 2001); Golon v. Ohio Savs. Bank, 1999 WL 184401 (N.D. Ill. Mar. 29, 1999); DeLeon v. Beneficial Constr. Co., 998 F. Supp. 859 (N.D. Ill. 1998); Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600 (N.D. Ill. 1997). See also Marbury v. Colonial Mortgage Co., 2001 WL 135719 (M.D. Ala. Jan. 12, 2001); Schmitz v. Aegis Mortgage Corp., 48 F. Supp.2d 877 (D. Minn. 1999); Potchin v. Prudential Home Mortgage Co., 1999 WL 1814612 (E.D.N.Y. Nov. 12, 1999);. The general consensus, and the view endorsed by the Department of Housing and Urban Development ("HUD") is that yield spread premium payments are not *per se* illegal, but that certain unscrupulous lenders use the yield spread premium payment improperly as a means to compensate brokers for originating loans with higher interest rates. A 1999 HUD regulation suggests a two-part test to determine whether a yield spread premium is an illegal referral fee or a permissible fee for service rendered. See Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080 (1999) ("1999-1 Policy Statement"). This two-part test was confirmed by a 2001 HUD policy statement issued to clarify HUD's 1999-1 Policy Statement. See Real Estate Settlement Procedures Act (RESPA) Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53052 (2001). Under the two-step framework for analyzing the legality of lender payments to brokers set forth in the 1999-1 and 2001-1 Policy Statements, this court is required to first consider "whether goods or facilities were actually furnished or services were actually performed for the compensation paid" and second, "whether the payments are reasonably related to

the value of the goods or facilities that were actually furnished or services that were actually performed." See 1999-1 Policy Statement, 64 Fed. Reg. at 10084; 2001-1 Policy Statement, 66 Fed. Reg. at 53054. The yield spread premium payment is to be factored in as one element of the broker's "total compensation" when evaluating the overall reasonableness of the compensation and the framework for evaluating the reasonableness of the total compensation for a particular transaction should be considered "in relation to price structures and practices in similar transactions and in similar markets." 1999-1 Policy Statement, 64 Fed. Reg. at 10084; 2001-1 Policy Statement, 66 Fed. Reg. at 53055.

In support of their motions to dismiss, CMC and Flagstar argue that the Michalowskis allege no more than the existence of a yield spread premium payment and a conclusory assertion that the premium was in excess of reasonable compensation for services provided. CMC and Flagstar maintain that the Michalowskis fail to allege any facts regarding the relation between the total compensation provided to CMC and the price structures and practices in similar transactions and similar markets as required under HUD's 1999-1 and 2001-1 Policy Statements. In the second amended complaint, the Michalowskis allege that the yield spread premium paid by Flagstar to CMC was unreasonable and was simply for the referral of business, not for compensation for goods, facilities, or services performed, as CMC was already compensated for said functions by the payment of $800 out of the loan proceeds for the commitment and processing fees. This court finds that while the Michalowskis will ultimately be required to establish that the yield spread premium was paid merely for the referral of business and was not compensation for services performed by CMC, this is a factual dispute for which the resolution may depend on many factors such as the interest rate on the Michalowskis' mortgage, Michalowskis' credit histories, the number and kind of services

CMC performed for Flagstar, whether CMC gave the Michalowskis the opportunity to consider products from different lenders, and whether CMC would receive the same compensation regardless of which lender's products were ultimately selected. See Vargas v. Universal Mortgage Corp., 2001 558045 at *2 (N.D. Ill., May 21, 2001) (listing relevant factors). Because the legality of a yield spread premium is highly dependent on the facts of each case and because this court finds the Michalowskis have plead their count I claim in a manner sufficient to put CMC and Flagstar on notice of the RESPA claim, the motion to dismiss the count I RESPA claim cannot be granted.

B. Count VII - TILA

Count VII alleges that CMC violated the Truth In Lending Act ("TILA"), 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. §§ 226.17-226.18, by issuing two TILA disclosures at the closing of the mortgage loan transaction without specifying which was the operative statement. Both of the relevant TILA statements the Michalowskis received at the closing are dated June 7, 2001 (Compl. Exs. G, H.). However, one of the TILA statements is marked as an estimate as provided for at the bottom of the form, (Compl. Ex. H), while the other TILA statement is not marked as an estimate. (Compl. Ex. G.) In the statement that is marked as an estimate, the box next to the label "means an estimate" is checked, as is the box next to the label "all dates and numerical disclosures except the late payment disclosures are estimates." (Compl. Ex. H). The Michalowskis only signed one statement, the statement that was *not* marked as an estimate, which consequently is the only operative statement. This court finds that CMC did not violate the TILA by providing the Michalowskis with one statement marked as an estimate and one statement signed as the operative TILA disclosure statement. Accordingly, this court dismisses count VII for failure to state a claim.

8

## II. State Law Claims

As a preliminary matter, this court will address Flagstar's argument that because Flagstar is a federally chartered savings bank regulated by the Office of Thrift Supervision ("OTS") under the Home Owners Loan Act ("HOLA"), all of the Michalowskis' state law claims against Flagstar are pre-empted. While Flagstar is correct in noting that part 560 of the OTS regulations entitled "Lending and Investment" provides that "OTS hereby occupies the entire field of lending regulation for federal savings associations," 12 C.F.R. § 560.2(a), this court finds that the Michalowskis' state law claims are not brought under state laws that "regulate lending." All of the state law claims allege fraudulent or tortious conduct by Flagstar. The Michalowskis do not maintain that the actual fees Flagstar charged are unlawful; rather, the Michalowskis challenge the methods through which Flagstar collected the fees, arguing that Flagstar knowingly overcharged and deceived the Michalowskis. Therefore, this court will not dismiss all of the Michalowskis' state law claims against Flagstar as pre-empted. The state law claims are discussed below.

### A. Counts II, V, VI - ICFA

Count II alleges that CMC and Flagstar charged the Michalowskis and the putative class members a yield spread premium merely for the referral of business without providing full and complete disclosure of all material facts relating to this transaction, thereby receiving amounts in excess of reasonable compensation for services provided in violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/1. The Michalowskis contend that the conduct of CMC and Flagstar was deliberate, oppressive, corrupt and dishonest. Count V alleges that Flagstar engaged in unfair and deceptive acts and practices by charging the Michalowskis and the putative class members $100 for a tax service fee that could be had for $48, failing to identify the person to whom

9

the $100 was disbursed, keeping or receiving back part of the $100 and stating on the HUD-1 form that the $100 was paid to Flagstar.

To show a violation of ICFA, a plaintiff must allege (1) a deceptive act or practice by defendants, (2) defendants' intent that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce. See Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 501 675 N.E.2d 584, 593 (1996). Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The heightened pleading standard imposed by Rule 9(b) applies to claims arising under the ICFA. Petri v. Gatlin, 997 F. Supp. 956, 973 (N.D. Ill.1997); Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 501, 675 N.E.2d 584, 593 (Ill.1996). The Michalowskis, then, must "identi[f]y . . . the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." Uni Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir.1992). In other words, the Michalowskis must plead the who, what, when, and where of the alleged fraud. Id.

CMC and Flagstar argue that the Michalowskis fail to plead counts II and V with the necessary particularity. The purpose of Rule 9(b) is to "ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 783 (7th Cir. 1999). Here, the Michalowskis are not challenging a wide variety of potential conduct by CMC and Flagstar; instead, their allegations are limited to two very specific and distinct charges, the yield spread premium payment in count II and

10

the tax service fee in count V. This court believes that the Michalowskis have adequately put CMC and Flagstar on notice as to what specific activities are alleged to be fraud.

CMC and Flagstar maintain next that counts II and V are nothing more than breach of contract claims, not valid claims under ICFA. Not every breach of contract constitutes a cause of action under ICFA. "[C]ourts have consistently resisted attempts by litigants to portray otherwise ordinary breach of contract claims as causes of action under the Act." Lake County Grading Co. v. Advance Mechanical Contractors, Inc., 275 Ill. App. 452, 458, 654 N.E.2d 1109, 1115 (2d Dist. 1995). Count II alleges that Flagstar paid CMC a referral fee to raise the Michalowskis' mortgage loan interest rate. Flagstar and CMC argue that the yield spread premium was disclosed on the HUD-1 settlement statement and signed by the Michalowskis and that therefore any payment of the premium is at most a breach of contract claim. This court disagrees. The Michalowskis do not assert that Flagstar and CMC failed to uphold their part of the contract with regard to the yield spread premium payment. The alleged fraudulent activity alleged was not the amount of the yield spread premium, but rather Flagstar's alleged deceptive act of paying CMC solely for arranging a higher interest rate on the Michalowskis' loan. Accordingly, this court finds that count II states a claim for a violation of ICFA.

As to count V, however, this court finds that the Michalowskis have simply alleged a breach of contract claim, not a claim under ICFA. Count V alleges that Flagstar charged the Michalowskis and others a $100 tax service fee that could be had for $48. The relevant contracts in this case include the note and the mortgage. (Compl. Ex. E, F.) The mortgage specifically authorizes the tax service charge the Michalowskis complain of, stating that "Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in

11

connection with this Loan." (Compl. Ex F at ¶ 4.) The note and the mortgage both provide that in the event the bank charges a fee in excess of that permitted under the law, that the overcharge will be reduced to the permitted limit and that any sums collected in excess will be refunded to the borrower. (Compl. Exs. E at ¶ 5, F at ¶14.) The Michalowskis argue that a business which imposes charges in excess of those permitted by consumer contracts engage in an unfair and deceptive practice. The core of the Michalowskis argument that Flagstar charged in excess of that permitted in the contract rests on the fact that the contract address the tax service charge. The contracts in this case specifically authorize the charging of the tax service fee and provides the remedy in the event the Michalowskis establish they were overcharged. Further, the allegation that Flagstar has also deceptively overcharged an unknown number of similarly situated "others" does not create an ICFA claim; it is merely an allegation that Flagstar has breached similar contracts with various other borrowers in the same position as the Michalowskis. Accordingly, this court dismisses count V of the second amended complaint.

Count VI is entitled "Restitution" and is based upon an allegation that Flagstar unjustly enriched itself by overcharging the Michalowskis the tax service fee. Since the remedy of restitution for unjust enrichment is not available in cases where the claim is governed by a contract. See F.H. Prince & Co. v. Towers Fin. Corp., 275 Ill. App. 3d 792, 804-05, 656 N.E.2d 142, 151 (1st Dist. 1995) ("Since the doctrine of unjust enrichment presents an implied or quasi-contract claim, where there is a specific contract which governs the relationship between the parties, the doctrine has no application."). Because this court finds that the alleged overcharging of the tax service fee in this case is governed by contract, this court appropriately dismisses count VI.

12

## B. Counts III and IV - Fiduciary Duty

Count III alleges that CMC, as the Michalowskis' mortgage broker and agent, breached its fiduciary duty to the Michalowskis by receiving money from Flagstar for increasing the loan interest rate to the Michalowskis' detriment without full disclosure of all material facts relating to this transaction. CMC maintains that the Michalowskis have failed to sufficiently plead the existence of an agency relationship. A fiduciary duty is "the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith–in fact to treat the principal as well as the agent would treat himself." Lagen v. Balcor Co., 274 Ill. App. 3d 11, 21, 653 N.E.2d 968, 975 (2d Dist. 1995). Although courts may find a fiduciary relationship when one person solicits another to repose trust in his expertise, "[t]he fact that one party trusts the other is insufficient [to create a fiduciary relationship]. We trust most people with whom we choose to do business." Id. An agency relationship has two components: 1) the principal has the right to control the manner and method in which the agent performs work for her, and 2) the agent has the power to subject the principal to personal liability. Knapp v. Hill, 276 Ill. App. 3d 376, 380, 657 N.E.2d 1068, 1071 (1st Dist. 1995). While a mortgage broker is not always a borrower's agent, this court will not dismiss count III for failure to adequately plead agency. The existence of an agent/principal relationship rests on factual underpinnings and cannot be determined on a motion to dismiss. See Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600, 614 (N.D. Ill. 1997) (citing Restatement (Second) of Agency § 1 (1957) (Whether an agency is created "depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking."). This court finds that the Michalowskis have adequately alleged a

13

breach of fiduciary duty in count III.

The Michalowskis allege in Count IV that Flagstar unlawfully induced CMC to breach its fiduciary duty to the Michalowskis in return for the yield spread payment. A third party may be held liable to a principal for a breach of fiduciary duty by another person if the third party: (1) knowingly participated in or induced the breach of duty, and (2) knowingly accepted the benefits resulting from the breach of duty. See Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600, 614-15 (N.D. Ill. 1997); Regnery v. Meyers, 287 Ill. App. 3d 354, 679 N.E.2d 74, 80 (1997). The Michalowskis allege that Flagstar provided CMC with rate sheets which indicated the yield spread premium it would pay to CMC if the interest rate CMC obtained on the mortgage was above the par rate and that the yield spread premium Flagstar ultimately paid to CMC was linked to the actual increase in the Michalowskis' interest rate. This court finds that count IV adequately pleads a claim for inducement of breach of fiduciary duty to defeat a motion to dismiss.

C. Counts VIII, IX, X - Unauthorized Practice of Law

In connection with the mortgage loan transaction, the Michalowskis were charged a document preparation fee of $110 for the filling out of the note, mortgage and related documents. The Michalowskis allege that Flagstar decided to impose the charge, CMC passed the charge on to the Michalowskis, and a third party document preparation services company, D.P.S., actually performed the work and received the $110. Count VIII alleges that Flagstar engaged in the unauthorized practice of law by charging a document preparation fee relating to the preparation of the note, mortgage, and related documents by D.P.S., a non-lawyer. Count IX alleges that Flagstar violated ICFA by charging the document preparation fee and failing to disclose that the services were not being performed by a lawyer. Finally, in count X, the Michalowskis seek restitution for the

14

document preparation charge.

Illinois law on the "unauthorized practice of law" is not extensive. Illinois courts have not recognized a cause of action for the "unauthorized practice of law" unless the plaintiff alleged that defendants either had represented themselves as attorneys, or negligently provided services, thereby causing damages. See Torres v. Fiol, 110 Ill. App. 3d 9, 11-12, 441 N.E.2d 1300, 1301 (1st Dist. 1982) (plaintiffs could maintain a private cause of action for damages against a non-attorney for the unauthorized and negligent practice of law); Rathke v. Lidisky, 59 Ill. App. 3d 560, 562, 375 N.E.2d 871, 872-73 (5th Dist. 1978) (affirming dismissal of the unauthorized practice of law count because plaintiff did not allege negligence or that any of the defendants represented themselves to be attorneys such that they would be held to a higher duty of care). In this case, this court notes first that the Michalowskis do not allege that Flagstar represented itself to be an attorney, nor do the Michalowskis allege that Flagstar negligently performed any legal service or mishandled the preparation of the loan documents. In fact, the Michalowskis do not even allege that Flagstar prepared the documents. The document preparation fee was remitted to a third party, D.P.S., a document preparation services company. Moreover, the Michalowskis do not allege that they suffered any damages from the actual preparation of the note and mortgage beyond the charging of the document preparation fee.

In support of their argument, the Michalowskis cite Chicago Bar Ass'n v. Quinlan and Tyson, Inc. for the general rule that "the drawing or filling in of blanks on deeds, mortgages or other legal instruments subsequently executed requires the peculiar skill of a lawyer and constitutes the practice of law." 34 Ill.2d 116, 122, 214 N.E.2d 771, 774 (1966). However, the Illinois Supreme Court in Quinlan and Tyson, suggested an exception to the general rule stated above that allows persons to

15

engage in the activities that otherwise might constitute "practicing law" as long as the activities are incidental to the corporations main business, and as long as the persons does not "advise[] others for consideration, that this or that is the law, or that this form or that is the proper form to be used in a certain transaction . . . ." See id. Illinois courts interpreting this exception have drawn a distinction between cases where non-lawyers provide legal advice and services to third-parties and cases where non-lawyers perform services intended to benefit themselves. In First Federal Savs. and Loan Assoc. v. Sadnick, the Illinois court held that defendant First Federal Savings and Loan Association did not engage in the unauthorized practice of law in preparing mortgages, noting that the defendant did not provide legal advice to the mortgagors or prohibit the mortgagors from retaining an attorney, and concluding that the preparation of the mortgage was to benefit the defendant. 162 Ill. App. 3d 581, 583, 515 N.E.2d 1354, 1356 (3d Dist. 1987). The Sadnick court concluded that "First Federal was merely preparing the mortgage documents, this without more does not constitute the practice of law." Id.; see also Johnson v. Pistakee Highlands Comm. Assoc., 72 Ill. App. 3d 402, 404, 390 N.E.2d 640, 642 (2d Dist. 1979) (holding that corporations could act for their own benefit as long as they do not hold themselves out as legal advisor or representative to anyone else).

This court finds that the Michalowskis have not stated a claim under Illinois law for the unauthorized practice of law. First, the Michalowskis do not allege that Flagstar negligently prepared the mortgage documents and caused damages. Even if negligence and damages were properly alleged, this court finds that Flagstar was preparing the mortgage and note for its own benefit and incidental to Flagstar's main business, and that Flagstar did not hold itself out to be a legal advisor or representative. Accordingly, count VIII is dismissed for failure to state a claim. This court likewise dismisses count IX because the mere allegation that Flagstar did not disclose the

16

fact that the document preparation services were not being performed by a lawyer, when there is no claim for the unauthorized practice of law, cannot constitute any deceptive act or practice for purposes of the ICFA. Finally, because the preparation of the documents was not the unauthorized practice of law, this court finds that the charging of the document preparation services was not inequitable conduct and therefore this court also dismisses count X, which seeks restitution for document preparation charge.

## CONCLUSION

For all the above stated reasons, CMC's and Flagstar's motions to dismiss are GRANTED in part as to counts V, VI, VII, VIII, IX, and X, and DENIED in part as to counts I, II, III, and IV. Accordingly, counts V, VI, VII, VIII, IX and X are dismissed with prejudice for failure to state a claim. The Michalowskis are ordered to file an amended complaint consistent with this opinion by February 7, 2002. CMC's and Flagstar's answer is to be filed on or before February 18, 2002. The parties are urged to discuss settlement, conference pursuant to Rule 26(f), file a joint Form 35 by February 22, 2002, and report on the status of the case at 9:00 a.m. on February 26, 2002.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: January 24, 2002